IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION


John Preston Brooks, II,              )        Civil Action No. 8:16-cv-01229-MGL-JDA
                                      )
                 Plaintiff,           )
                                      )        **REPORT AND RECOMMENDATION**
                                      )        **OF MAGISTRATE JUDGE**
           vs.                        )
                                      )
Nancy A. Berryhill,                   )
Acting Commissioner of Social Security,  )
                                      )
                 Defendant.           )


  This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is

recommended that the decision of the Commissioner be reversed and remanded for

administrative action consistent with this recommendation, pursuant to sentence four of 42

U.S.C. § 405(g).

## PROCEDURAL HISTORY

  On September 23, 2014, Plaintiff protectively filed an application for DIB, alleging an

onset of disability date of February 15, 2010.  [R. 215–16.]  The claim was denied initially and

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

upon reconsideration. [R.94–143]. Thereafter, Plaintiff filed a written request for hearing and, on January 14, 2016, appeared with an attorney and testified at a hearing before Administrative Law Judge ("ALJ") Tammy Georgian. [R. 35–77.]

On February 10, 2016, the ALJ issued a decision finding Plaintiff not disabled from February 15, 2010, through the date of the decision.[2] [R. 17–30.] The ALJ noted that Plaintiff had filed a prior application for DIB benefits on February 22, 2012, alleging disability since December 1, 2010, and that his application was denied initially and upon reconsideration; that the ALJ had issued a decision on March 18, 2014, finding him not disabled and no request for review of that decision was made; and that, consequently, the decision of the Commissioner on the issue of the claimant's disability status through March 18, 2014, is final. [R. 17.]

At Step 1, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2017, and has not engaged in substantial gainful activity since February 15, 2010[3]. [R. 19–20, Findings 1 and 2.] At Step 2, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease (DDD),

---

[2] While the ALJ's decision indicated she found Plaintiff not disabled since February 15, 2010, she also stated that her decision "will primarily consider whether the claimant has been disabled at any time since March 18, 2014, the date after the prior decision and a date before his current protected filing date of September 23, 2014, in his current Title II application." [R. 17.]

[3] While the ALJ found that Plaintiff "has not engaged in substantial gainful activity since February 15, 2010," in the body of the decision, she also found that Plaintiff "has engaged in SGA as defined by 20 C.F.R. §404.1574(2) and §416.972(2) since his alleged onset date and is therefore not entitled to disability benefits from the alleged onset date through the end of 2012." [R. 20.] These findings *appear* to be in conflict. It is unclear to the Court how or if this finding played a role in her decision. These findings should be clarified on remand.

2

osteoarthritis of the knees and shoulder, anxiety disorders, and obesity. [R. 20, Finding 3.] The ALJ found that Plaintiff had non-severe impairments of sleep-related breathing disorders and osteoarthritis of the neck but those did not cause more than a minimal limitation, if any, in his ability to perform basic work activities. [R. 20.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [R. 21, Finding 4.]

Before addressing Step 4, the ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with some limitations. Due to symptomology, the claimant is limited to frequent sitting, standing, and walking. Due to postural limitations, the claimant is limited to frequent balancing, stooping, kneeling, crouching, and climbing of ramps or stairs. However, the claimant is limited to only occasional crawling or climbing of ladders, ropes, and scaffolds. Manipulatively, the claimant is limited to frequent overhead reaching. Due to environmental limitations, the claimant must avoid all exposure to very loud noises. Additionally, the claimant must avoid concentrated exposure to workplace hazards. Due to mental deficits, the claimant is limited to simple, routine, and repetitive tasks requiring only superficial interactions with coworkers or the general public. The claimant is further limited to only occasional changes in the work setting.

[R. 22.]

At Step 4, the ALJ found that Plaintiff was unable to perform his past relevant work as a U.S. Army infantry soldier, corrections officer, aircraft assembler, landfill equipment operator, concrete truck driver, or log truck driver. [R. 29, Finding 6.] At Step 5, taking into consideration Plaintiff's age, education, work experience, RFC, and the testimony of the

vocational expert ("VE"), the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 29, Finding 10.] Thus, the ALJ found Plaintiff was not disabled from February 15, 2010, through the date of the decision. [R. 30, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, and it denied his request for review. [R. 1–6.] Plaintiff filed this action for judicial review on April 20, 2016. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends substantial evidence does not support the Commissioner's decision and errors of law require remand. Specifically, Plaintiff alleges the ALJ applied the wrong legal standard in evaluating Plaintiff's Department of Veterans Affairs ("VA") disability rating and, thus, she did not adhere to the rule articulated by the Fourth Circuit in *Bird v. Comm'r*, 699 F.3d 337 (4th Cir. 2012). [Doc. 12 at 3–7.] Plaintiff also contends the ALJ made extra-judicial comments, advising Plaintiff that she was putting herself in the role of "the devil's advocate" in the hearing, which is contrary to her duty as the decision-maker to make "a fair, independent and impartial decision based on the law and evidence." [*Id.* at 2–3.] Further, Plaintiff challenges the ALJ's discussion of the VE's testimony elicited in light of examination by Plaintiff's counsel. [*Id.* at 8-9.] And, lastly, Plaintiff contends the ALJ's credibility analysis was flawed because the ALJ failed to give cogent reasons for finding Plaintiff's testimony regarding his alleged limitations not credible in light of the record evidence. [*Id.* at 9–10.]

The Commissioner contends the ALJ's decision should be affirmed because substantial evidence supports the decision especially given the deferential standard of review

applicable to this case. Specifically, the Commissioner alleges the ALJ appropriately discounted the VA rating decision and offered appropriate reasons for affording it little weight, noting that contrary to Plaintiff's assertion, the ALJ was not required to cite to *Bird* or any other case in her decision, but was only required to follow the correct procedures. [Doc. 13 at 8–15.] The Commissioner also contends that the ALJ properly relied on the VE's testimony, appropriately included the relevant portion of the VE's testimony in her decision, and nothing more was required. [*Id*. at 15–18.] Further, the Commissioner argues the ALJ properly considered the factors contemplated by the regulations and applicable law for evaluating Plaintiff's subjective complaints and provided articulated proper reasons to support her credibility finding. [*Id*. at 18–22.] The Commissioner did not address the ALJ's extra-judicial comments regarding her status as "devil's advocate" in these proceedings.

## **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla

of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify

or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was

discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)

(remanding case where neither the ALJ nor the Appeals Council indicated the weight given

to relevant evidence). On remand under sentence four, the ALJ should review the case on a

complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The

[Commissioner] and the claimant may produce further evidence on remand."). After a remand

under sentence four, the court enters a final and immediately appealable judgment and then

loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102

(1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only upon
> a showing that there is new evidence which is material and that
> there is good cause for the failure to incorporate such evidence
> into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis

of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been different

had the new evidence been before him; (3) there is good cause for the claimant's failure to

submit the evidence when the claim was before the Commissioner; and (4) the claimant made

at least a general showing of the nature of the new evidence to the reviewing court. *Borders*

*v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v.*

*Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir.

1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

## B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be

11

severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.   *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to

the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

15

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact,

whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.*

(emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth

Circuit, it is well established that "subjective complaints of pain and physical discomfort could

give rise to a finding of total disability, even when those complaints [a]re not supported fully

by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing

*Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a

claimant's statements about his symptoms, including pain, and determine the extent to which

the symptoms can reasonably be accepted as consistent with the objective medical evidence.

20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the

claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d

107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all

administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of

pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The

Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II and
> XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects of

> a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the

testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Consideration of the VA Disability Rating**

Plaintiff alleges the ALJ erred because she cited to and applied *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002), in her decision as the basis for determining the deference owed to the VA decision, rather than apply the law of this circuit which is articulated in *Bird v. Comm'r*, 699 F.3d 337 (4th Cir. 2012). [Doc. 12 at 3.] And, Plaintiff argues that even if the ALJ was not required to specifically cite the *Bird* standard, the ALJ still did not comply with it. [Doc. 14 at 6.] For the reasons stated herein, the Court agrees that the ALJ failed to properly apply the law of this circuit in evaluating the VA rating decision in this matter.

### *The VA disability rating*

In a letter dated May 23, 2012, the Department of Veterans Affairs issued a "proposed VA Rating Decision" ("the VA decision") to Plaintiff's service department based on him being found unfit for continued service. [R. 212] The VA proposed the following unfitting disabilities were related to Plaintiff's military service and were, thus, considered service related: anxiety disorder (50%); degenerative arthritis of right (dominant) and left shoulder joints (10% each); status post right wrist (dominant) ganglion cyst excision (10%); lumbar strain, thoracic spine osteoarthritis and spondylosis (10%); and right and left hip osteoarthritis (10% each). [R.

213.] This letter was provided as an estimate for Plaintiff's "transition planning purposes" and did not constitute a final decision by the VA. [*Id*.]

An *Informal Physical Evaluation Board (PEB) Proceedings* form dated August 7, 2012, documenting initial findings, and noted that the PEB found Plaintiff physically unfit to continue in service and recommended a rating of 80% with a recommendation of reexamination in May 2013. [R. 210.] With respect to Plaintiff's anxiety disorder (assessed 50% disability rating), the PEB form explained that Plaintiff's psychiatrist attributes anxiety symptoms to combat stressors encountered during Afghanistan and renders Plaintiff unable to reasonably continue military service due to irritability, anxiety episodes, sleep difficulty, avoidance symptoms, and recurrent recollections. [*Id*.] The PEB also noted that Plaintiff was assessed 10% disability ratings, respectively, for each of the following impairments which they found were service related: right and left shoulder osteoarthritis; right wrist ganglion resection with limitation of movement and strength; thoracic spine osteoarthritis; right and lift hip osteoarthritis; right and left knee osteoarthritis; and left foot bunionectomy with limitation of movement. [R. 210–11.]

Approximately eight (8) months later, on April 29, 2013, a veteran's affairs officer issued letters to both the State Department of Revenue and the Department of Natural Resources on behalf of Plaintiff indicating that he had been determined to be 100% permanently disabled due to service-connected disabilities, effective December 25, 2012. [R. 206.] On February 5, 2014, the Department of the Army issued an Army CRSC Decision Letter with respect to Plaintiff's December 31, 2013, application indicating that they had reviewed his claim for Combat-Related Special Compensation ("CRSC") and approved his

claim. [R. 207.] The letter explained that they found Plaintiff to be 50% disabled due to anxiety disorder combat-related. [*Id.*]

Treatment notes dated February 18, 2014, from Plaintiff's psychologist at the VA, Norman D. Farley, Ph.D. ("Dr. Farley"), indicated a worsening in Plaintiff's PTSD with an increase in symptoms and decrease in functioning, including panic attacks and trouble sleeping. [R. 573.] On or about February 25, 2015, Plaintiff's PTSD disability rating was increased from fifty (50%) percent to seventy (70%) percent, with sleep apnea syndrome rated at fifty (50%) percent and valvular heart disease rated at thirty (30%) percent. [R. 716.] Plaintiff's service connected disability rating was again noted to be 100%. [*Id.*] The remaining physical limitations, previously considered, remained unchanged at ten (10%). [*Id.*]

### *The ALJ's Consideration of the VA disability rating*

During the RFC analysis, the ALJ explained her review of certain VA records. The ALJ specifically stated

> In addition to the claimant's testimony, I have carefully considered the claimant's treatment history. Reviewing all of the objective evidence of record, the claimant received medical treatment for his impairments at agencies including the Veteran Affairs (VA) Hospital of Charleston (Exhibits B1F - B3F, B5F, B8F, and B10F). Additionally, I have reviewed the claimant's filings, developmental history, consultative examinations, and other opinion evidence of record (Exhibits B1A - B8A, B1E - B14E, B4F, B6F - B7F, and B9F). However, this summary of the claimant's treatment history will focus upon his established severe impairment.

> The objective medical evidence supports findings for severe impairments related to the claimant's degenerative disc disease (DDD), osteoarthritis of the knees and shoulder, anxiety

21

disorders, and obesity. Reviewing the medical evidence, the claimant does have an extensive history of treatment with the VA Hospital of Charleston, South Carolina (Exhibits BF - B2F, B5F, and B8F). Prior to the end of 2012, the claimant has a treatment history including a bunionectomy of his left foot, status-post excision of a left ganglion cyst, hypertension, sinus allergies, hernia, high cholesterol, and anxiety disorder (Exhibit B1F). However, as previously discussed, the claimant was capable of performing work above substantial gainful activity levels during this same period, as will be discussed below.

While still serving with the United States Army (USA), the claimant met a medical evaluation board and was evaluated as being status post left foot bunionectomy, status post right wrist ganglion cyst surgery, with diagnoses for chronic fatigue syndrome, and multiple joint arthritis (Exhibit B1F/26 - 70). Although the claimant was recommended for discharge, he appears to have been allowed to serve throughout 2012 (Exhibit B1F/29). More significantly, the claimant was diagnosed with Post Traumatic Stress Disorder (PTSD) or an anxiety related disorder (Exhibit B1F/35 - 38). However, it is worth noting that while the claimant did deploy overseas, he admitted that he "never witnessed the killing or death of another" and he never "shot at anyone" (Exhibit B1F/35). Nevertheless, the claimant reported symptoms including shortness of breath, anger, and a dislike being among crowds (Exhibit B1F/35).

On March 12, 2013, the claimant presented to the VA Hospital to establish care (Exhibit B2F/302–308). Although the claimant reported some body aches that he thought were related to his arthritis diagnosis, the claimant also reported that he was feeling "generally well" (Exhibit B2F/302). According to his treatment notes on March 27, 2013, the claimant's anxiety was being treated with a high dose of medication (Exhibit B2F/301). On April 17, 2013, the claimant appears to have been fitted for orthotic insoles (Exhibit B1F/71). On May 23, 2013, the claimant reported that he enjoyed deer hunting (Exhibit B2F/292). On June 11, 2013, the claimant reported that he was doing "pretty well," he had been consistent with his psychiatric medications, and he reported "greatly benefitting" from psychotherapy (Exhibit B2F/288–289). Subsequently, the claimant reported that he was planning to learn to fly fish (Exhibit B2F/284). On October 15, 2013, the claimant continued to report good benefit from his

medications except he was now experiencing some difficulty getting going in the morning (Exhibit B2F/269).

On September 12, 2013, the claimant presented for a diagnostic study of his left shoulder, which was unremarkable (Exhibit B2F/13, 194). However, a Magnetic Resonance Imaging (MRI) of the claimant's left shoulder did indicate a partial undersurface tear, with a partial thickness tear, and anterior labrum irregularities consistent with moderate degenerative changes (Exhibit B2F/191 - 194). X-rays of the claimant's right knee and right shoulder only indicated mild findings (Exhibit B2F/190 - 191). Subsequent testing of the claimant's knees indicated that the claimant's knees were intact with only mild defect findings (Exhibit B2F 186 - 187). Similarly, the claimant was assessed with arthralgia related to a left shoulder partial tear on November 5, 2013 (Exhibit B2F/12, 259). On this same date, the claimant was examined normally in a physical examination and the claimant was assessed as being able to perform "all functions" (Exhibit B2F/91-92). However, on February 13, 2014, the claimant reported he now required a cane to ambulate (Exhibit B2F/177 - 178). By March 12, 2014, the claimant's shoulder pain symptoms were being treated by narcotic pain medications (Exhibit B2F/145 - 148). ). On July 11, 2014, the claimant presented for a right knee MRI, which indicated mostly normal findings except for minimal edema (Exhibit B2F/4 - 7). X-rays of the claimant's right knee were also unremarkable (Exhibit B2F/8 - 9).

On March 20, 2014, the claimant was treated for chronic pain in his shoulders related to his history of rotator cuff and left shoulder problems (Exhibit B2F/232). Subsequently, the claimant presented regularly for treatment of his anxiety related symptoms, but he also reported that he was attending church, albeit inconsistently (Exhibit B2F/221 - 228). During multiple follow-up appointments, the claimant reported that he was doing "pretty good" and he was benefitting from his psychiatric medications (Exhibit B2F/133 - 141 and 202 - 214). However, the claimant was unsatisfied with the care he was receiving for his shoulder (Exhibit B2F/139). On June 25, 2014, the claimant did report some worsening anxiety symptoms, but these seem to be related to arguments with his fiancee's daughter (Exhibit B2F/120–131). Previously, the claimant reported some difficulty with reliability and productivity as well as problems establishing relationships

(Exhibit B2F/72). However, the claimant reported a long-term relationship with his fiancee and he was reluctant to talk specifically about his symptoms (Exhibit B2F/73 - 80).

Between September 25, 2014, and March 5, 2015, the claimant consulted with the VA Hospital regarding oral surgery including a crown and a bridge for his teeth (Exhibit B5F/5 - 23). Prior to this, the claimant continued to report good benefit from his anxiety medications on December 16, 2014 (Exhibit B5F/14). During a mental health examination on May 8, 2015, the claimant reported that "things are steady, I'm doing well" (Exhibit B8F/15). On August 10, 2015, the claimant failed to show for a mental health appointment (Exhibit B8F/12). However, the claimant returned for treatment on August 13, 2015 (Exhibit B8F/9). During his examination, the claimant reported that his mood was "stable and positive most of the time" (Exhibit B8F/9). Although the claimant reported some anxiety related symptoms were present, he also reported them not "interfering with function significantly until he tries to go to sleep" (Exhibit B8F /9).

[R. 24–25.]

After reviewing the evidence from Plaintiff's VA records, the ALJ found as follows:

I am mindful that the claimant has been found disabled by the Veteran's Administration (VA) and is currently receiving disability payments from that agency. (Exhibits B1D - B3D) That finding corresponded to the claimant's testimony that he currently receives VA benefits. Reviewing his filings, the claimant appears to have been granted a 100% rating by the Department of Veterans Affairs (Exhibits B2D - B3D). Specifically, the claimant was granted a Veteran Affairs service connection evaluation for anxiety disorder at 50% effective December 25, 2012 (Exhibit 6D/1). Similarly, the claimant was granted two 10% service connection evaluations for degenerative arthritis of his bilateral shoulder joints, 10% for his status post right wrist ganglion cyst excision, 10% for his lumbar strain and thoracic spine arthritis, and two 10% ratings for his bilateral hip osteoarthritis (Exhibit B2D/8). I have carefully considered all of these ratings as well as medical evidence supporting them. However, the Social Security Administration makes determinations of disability according to Social Security law, therefore a determination of disability by another agency is not binding on this Administration. (20 CFR

404.1504 [20 CFR 416.904], see also SSR 96-5p on issues reserved to the Commissioner).

Under *McCartey v. Massanari*, 298 F. 3d 1072 (9th Cir. 2002), the court concluded that an Administrative Law Judge must ordinarily give great weight to a Veterans Administration determination of disability. The court ruled that the Veterans Administration criteria for evaluating disability are very specific and translate easily into the Social Security Administration's disability framework. However, because the Veterans Administration and Social Security Administration criteria for determining disability are not completely synonymous, the Administrative Law Judge may give less weight to a Veterans Administration disability rating if he or she gives persuasive, specific, valid reasons for doing so that are supported by the record. With this in mind, after weighing and measuring the extensive medical evidence from the VA, I find their determination does substantiate the awarding of disability benefits pursuant to their regulations. However, as discussed in more detail below, while I do agree with the VA determination that medically determinable impairments limit the claimant's functioning, I do not find that they fully establish disability under SSA criteria.

[R. 27–28.]

### Discussion

As an initial matter, the Court notes that the ALJ found as follows: "after weighing and measuring the extensive medical evidence from the VA, I find that *their* determination does not substantiate the awarding of disability benefits pursuant to *their* regulations."[7] [R. 28 (emphasis added).] The ALJ, however, did not explain her basis for finding that the VA

---

[7]It appears the ALJ articulated an *out-right* dismissal of the VA Decision based on her finding that the VA's decision did not confirm to their own regulations. It is unclear to the Court what authority the ALJ has to make such a review of the VA Decision. The ALJ's duty here was to weigh the VA decision under the SSA's regulations. In the event this was a misstatement, this should be clarified on remand.

regulations did not support their finding of disability. And, while the ALJ agreed with the VA's determination "that medically determinable impairments limit the claimant's functioning, [she did] not find that they fully established disability under SSA criteria." [*Id*.] As explained herein, the ALJ's decision fails to bridge the gap between the evidence and her ultimate findings sufficiently for this Court to make a substantial evidence review.

While a VA disability determination is not binding on the Commissioner, as a starting point the Administration must give substantial weight to a VA disability rating. *See* Report and Recommendation, *Robinson v. Colvin*, C/A No. 6:15-1786-TMC-KFM, 2016 WL 3617971, at *9–11 (D.S.C. June 11, 2016), *adopted by* 2016 WL 3595564 (July 5, 2016). And, the ALJ should sufficiently explain the consideration given to a VA disability decision. *Id*.; *Bird v. Comm'r*, 699 F.3d 337, 343–44 (4th Cir. Nov. 9, 2012) ("SSA must give substantial weight to a VA disability rating"); *see also* SSR 06–03P, 2006 WL 2329939, at * 7(SSA) (ALJ "should explain the consideration given to [the VA disability determination] in notice of decision ..."). Under *Bird*, the Commissioner may give less weight to a VA disability rating when the record before the ALJ "clearly demonstrates" that such a deviation from a finding of substantial weight is appropriate. *See Bird*, 699 F.3d at 344; *see also* Report and Recommendation, *Robinson v. Colvin*, C/A No. 6:15-1786-TMC-KFM, 2016 WL 3617971, at *9–11 (D.S.C. June 11, 2016)(where the ALJ did not discuss in any detail why or how he assigned weight to the VA rating decision, remanded for the ALJ to follow the method prescribed in *Bird*), *adopted by* 2016 WL 3595564 (July 5, 2016); Report and Recommendation, *Gannon v. Colvin*, C/A No. 9:15-3250-RMG-BM, 2016 WL 5339698, at

*6–7 (D.S.C. Aug. 22, 2016) (the ALJ's minimal discussion of the VA rating was not sufficient to clearly demonstrate that a deviation from a finding of substantial weight was appropriate, and remanded for a more proper weighing pursuant to the methodology outlined in *Bird*), *adopted by* 2016 WL 5338504 (Sept. 21, 2016); *Wood v. Colvin*, C/A No. 9:12-3570-MGL, 2014 WL 607707, at *4 (D.S.C. Feb. 18, 2014) (remanding the case so the ALJ could properly discuss the VA disability rating and whether deviation was appropriate under the standard in *Bird*); *Cobbs v. Colvin*, C/A No. 1:12-3472-JMC-SVH, 2014 WL 468928, at *8–9 (D.S.C. Feb. 4, 2014) (remanding for evaluation of the VA ratings in accordance with the *Bird* standard).

Here, the ALJ never expressly assigned a weight to the VA disability rating or stated that she was assigning *substantial weight* as a starting point in her evaluation of the VA rating decision. *See McClora v. Colvin*, Civ. A. No. 5:14–cv–441–DCN, 2015 WL 3505535, at *16 (D.S.C. June 3, 2015) (finding remand appropriate because the ALJ's decision "does not indicate that ... [the ALJ] considered 'substantial weight' to be the starting point for weight to give to VA ratings.") To the contrary, the ALJ incorrectly explained that an ALJ must ordinarily give "*great weight*" to a VA disability determination, but never indicated that she was even beginning her evaluation by assigning the decision great weight. [*See* R. 28.] Curiously, as stated previously, the ALJ indicated that she found the VA determination did not substantiate an award of benefits "pursuant to their regulations." [*Id.*] Clearly, regardless of the explanation propounded by the Commissioner, the ALJ's failure to assign weight to the VA decision, and her failure to conduct an evaluation of the VA decision starting with an acknowledgment of her

duty to assign "substantial weight," leaves the Court unable to adequately review the decision or find that it is supported by substantial evidence.

Upon further review of the ALJ's decision, the Court notes that the ALJ seemed to merely disregard the VA ratings based on her finding that "the Social Security Administration makes determinations of disability according to Social Security law, therefore a determination of disability by another agency is not binding on this Administration." [R. 28.] While it is true that the VA's disability procedures are different than the Administration's procedures, that is not itself a basis on which to disregard the VA's findings. *See* Report and Recommendation, *Gannon v. Colvin*, C/A No. 9:15-3250-RMG-BM, 2016 WL 5339698, at *6 (D.S.C. Aug. 22, 2016)(citing *Bird*), *adopted by* 2016 WL 5338504 (Sept. 21, 2016).

And, while the ALJ gave a cursory summary of Plaintiff's medical history with the VA, highlighting notes supportive of her decision, she appears to have dismissed evidence of Plaintiff's worsening PTSD symptoms by explaining them away as being related to Plaintiff's arguments with his fiancee's daughter. [R. 25.] A review of the medical records from the VA, however, document findings by Plaintiff's treatment providers at the VA of worsening symptoms and, as a result, an increase in his disability rating for PTSD from 50% to 70%. [*See* R. 716.] The ALJ never acknowledged an increase in Plaintiff's PTSD rating by the VA based on medical findings of the VA physicians. The ALJ also appeared to question the veracity of Plaintiff's PTSD diagnosis by finding it "worth noting that while claimant did deploy overseas, he admitted that he 'never witnessed the killing or death of another' and he never 'shot at anyone'." [R. 24.] The Court finds these conclusions by the ALJ to be not only disturbing, but finds them to be an inappropriate attempt to make medical conclusions

particularly in light of findings by VA physicians supporting this diagnosis. *See Gallman v. Colvin,* No. 5:12–cv–2979, 2014 WL 658002, at *8 (D.S.C. Feb.19, 2014) (finding that ALJ was not "free to simply disregard uncontradicted expert opinions in favor of his own opinion on a subject he is not qualified to render," and noting that the ALJ "offered little explanation" for his conclusions as to the expert's opinion and did not discuss any medical evidence that conflicted with the opinion); *see also Baker v. Colvin*, Civ. A. No. 14-4249-PJG, 2016 WL 527054 at *7 (D.S.C. Feb. 9, 2016) (holding that the ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who submitted an opinion to or testified before him") (internal quotations and citation omitted)).

After reviewing the evidence, the ALJ found that Plaintiff's "limitations are very close to where they were at the point of the [ALJ's] prior decision" and that "not much has changed concerning the claimant's treatment or allegations." [R. 28.] The ALJ, however, failed to explain her consideration of either Plaintiff's increased PTSD rating (from 50% to 70%), or his additional diagnoses of sleep apnea syndromes and valvular heart disease which were assigned disability ratings of 50% and 30% respectively by the VA after its initial disability findings and after the prior decision of the Commissioner. [*See* R. 716.] Additionally, the ALJ acknowledged Plaintiff's obesity, but never explained the effect of his obesity on his physical limitations in the RFC analysis, particularly in light of treatment notes from the VA indicating that Plaintiff was morbidly obese, suffered probable weight related hypogonadism and musculoskeletal issues, and should be evaluated for consideration for bariatric surgery.

[R. 780–82.] Thus, the ALJ's finding that "not much changed" concerning Plaintiff's treatment or limitations does not appear to be consistent with the record evidence.

Based on the above, the Court finds that the ALJ's failure to initially assign substantial weight to the Plaintiff's VA disability rating and explain her deviation from that assignment, as well as her cursory review and discussion of the medical evidence, fails to comply with the *Bird* standard requiring that the ALJ must "clearly demonstrate" that a deviation from substantial weight is appropriate. *McClora*, 699 F.3d at 343 (*quoting Bird*). Accordingly, the undersigned recommends that this case be remanded with instructions for the ALJ to follow the specific method for weighing VA disability ratings prescribed in *Bird. See Lawson v. Colvin*, C.A. No. 0:14–CV–4662–DCN–PJG, 2015 WL 7769234, at *4 (D.S.C. Nov. 17, 2015) (recommending remand for assessment of VA disability rating in accordance with the *Bird* standard), *adopted by* 2015 WL 7776897; *Sims v. Colvin*, C.A. No. 2:14–CV–03005–TLW, 2015 WL 5474760, at *6 (D.S.C. Sept. 17, 2015) (remanding for evaluation of VA ratings in accordance with the *Bird* standard); *Cobbs v. Colvin*, C.A. No. 1:12–CV–03472–JMC, 2014 WL 468928, at *8 (D.S.C. Feb. 4, 2014) (same).

**Remaining Allegations of Error**

Upon remand, the ALJ is to take into consideration Plaintiff's remaining allegations of error. Additionally, the ALJ should (1) reconsider her evaluation of Plaintiff's credibility in accordance with SSR 96-7p; (2) reassess Plaintiff's RFC in light of the combined effect of all his legitimate impairments and the potential factors for precipitating and aggravating symptoms; and (3) reassess the hypothetical questions presented to a VE in light of the RFC,

her finding that Plaintiff has moderate difficulties related to concentration, persistence or pace, and Plaintiff's claim of being off task 20%-30% of the time. *See Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (explaining that the ability to perform simple tasks differs from the ability to stay on task which relates to concentration, persistence or pace).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

April 26, 2017                              s/Jacquelyn D. Austin
Greenville, South Carolina          United States Magistrate Judge